LAND, J.
This is a suit for damages for an alleged assault and battery committed at Winnfield Station.by a conductor of one of defendant’s trains on the plaintiff, who was a passenger thereon. The petition alleges, in substance, that the plaintiff boarded the' train for the purpose of interviewing J. H. Hart on some business matter, and met him as he was making preparations to get off at Winnfield; that, while explaining the importance of the business to Hart, the conductor ordered the latter to get off the train; that plaintiff offered to pay the fare of Hart to-a station beyond Winnfield, but that the conductor paid no attention to the offer, but without excuse or pretext assaulted the said Hart, and was inflicting such punishment that plaintiff attempted to arrest his brutal blows; that upon this interference the conductor turned on the plaintiff and inflicted on him such blows and other punishment that he fell unconscious to the floor of the ear; and that he was unable to attend to his work for a month.
Defendant specially denies that its conductor assaulted either Hart or the plaintiff as charged, and avers that its conductor at the time alleged was conducting J. H. Hart from its train at Winnfield in an orderly way, and in pursuance of his duties as conductor, whereupon, said conductor, in self-defense, resisted plaintiff, only using such force with him as was necessary and in self-defense.
*412 Defendant further pleaded that the damage, if any, suffered by the plaintiff, was the direct consequence of his own fault and unlawful conduct in assaulting defendant’s conductor.
The case was tried before the court; and the plaintiff has appealed from a judgment of nonsuit.
There is no evidence other than the testimony of the plaintiff to show that the conductor committed an assault and battery on Hart as alleged in the petition. When the difficulty took place, the conductor was escorting Hart, who was somewhat intoxicated, down the aisle of the car, and in so doing held him by the arm; that the plaintiff interfered is alleged in the petition, and is shown by the evidence of all the witnesses, who differ only as to the manner and the extent of such interference.
On the trial the plaintiff’s witnesses testified as to the interference as follows:
.1. L. Brewton:
“The conductor wanted Mr. Hart to get off. He didn’t seem to want to get off, and Mr. Stothart told the conductor he would pay the man’s fare, but he took hold of the fellow and was fixing to put him off, and in the round Mr. Stothart got in with him some way. They got jungled up together. The conductor struck Mr. Stothart.”
The same witness on cross-examination testified that Hart “seemed to be drunk”; and that Stothart had hold of Hart and the conductor, the latter by the arm (he thinks).
O. L. Rabón:
“The conductor came in and got hold of Mr. Hart, and was pushing him along through the car, and Alex (Stothart) got hold of the conductor, as well as I remember, and the conductor struck Alex. * * Why, he had hold of him seemed like trying to get him loose from this man Hart. * * * Mr. Hart looked to be drunk. * * * I don’t know which way Alex came, but I saw that he had the conductor by the arm; but, as well aí¡ I remember, he was behind him and had him by the arm.”
After stating that he was not positive as to the position, the same witness said on cross-examination:
“He had him by the arm, but I don’t remember -whether or not he ran up. * * * He was behind him when he had him by the arm, but I don’t know whether he came in behind or not. * * * Q. Now, when you saw him, though he was behind the conductor and had him by the arm? A. Yes, sir. Q. Did he have him by one arm or both arms? A. Both arms.”
The plaintiff testified in part as follows:
“We. were standing near the center door in the coach, talking. We had only been there a second or two before Mr. Norton came in. He told Hart to get off the train. Hart told him he didn’t know whether he would or not. He grabbed Hart, and jerked him down the aisle two or throe feet. I told him I wanted to see Hart on business, and was going to pay his fare. He shoved Hart again up against the seat, and I grabbed Hart with one hand and Mr. Norton with the other. With this he struck me."
Hart, witness for defendant, testified in part as follows:
“Well, Mr. Stothart and me were in the car, talking, and Mr. Norton came round and took hold of me and told me to get off the train, or it was time to get off, and Mr. Stothart told him he would pay my fare up the road, and, as well as I remember, I told him I wanted to get off at Winnfield, and he took me and started to take me out the back end of the train, and that is about all I know of it.
“Q. Did Mr. Norton handle you roughly, Mr. 1-Iart?
“A. Not that I know of, he didn’t.”
The conductor, auditor, and two other witnesses for the defense all testified that the plaintiff assaulted Norton from the rear by throwing one or both arms around him. As we have seen, the witness Rabón testified that the plaintiff was behind Norton when he had him by both arms.. The witnesses for the defense all concur in the statement that no force was used against Hart except the gentle coercion necessary in the case of intoxicated persons. Hart’s condition was obvious, and is shown by his lack of memory as to the difficulty between the plaintiff and the conductor. Hart had arrived at his destination, and had left the train, when he was called back by the plaintiff. The train was about to leave Winnfield, and the conductor was doubtless surprised to find Hart again on board, and naturally insisted on his leav *414 ing the coach. At this junction the plaintiff interposed, and offered to pay Hart’s fare to another station. It appears that the latter did not offer to pay fare, and had not made up his mind to go further. The train was late, and could not wait on the vagaries of a man under the influence of intoxicating liquors. In fact, if Hart and several other witnesses are to be believed, he expressly declared his intention not to go beyond Winnfield.
The preponderance of the evidence is in favor of the conclusion that the plaintiff brought on the difficulty by an assault and battery on the conductor, who, surprised by the suddenness of the attack, struck two short blows, and then desisted. Plaintiff was not knocked down, and his visible injuries consisted of a “black eye.” We are not prepared to say that unnecessary violence was used by the conductor under the facts and circumstances as they appeared to him at the time.
There is no suggestion that other evidence material to the issues can be procured on another trial. Therefore there is no good reason why final judgment should not be rendered in the case.
It is therefore ordered that the judgment appealed from be amended by striking out the words “as of nonsuit,” and as thus amended be affirmed.