116 So.2d 833 (1959)
Luther W. PEARSON, Plaintiff-Appellant,
v.
Alonzo TAYLOR et al., Defendants-Appellees.
No. 9134.
Court of Appeal of Louisiana, Second Circuit.
December 22, 1959.
George J. Ginsberg, Alexandria, for appellant.
Cameron C. Minard, Columbia, Gravel, Humphries, Sheffield & Fuhrer, Alexandria, for appellees.
AYRES, Judge.
This is an action in tort instituted by Luther W. Pearson against Alonzo Taylor, deputy sheriff, and Doug Floyd, sheriff of LaSalle Parish, Louisiana, for personal injuries arising out of his having been shot February 24, 1952. Taylor admitted the shooting, but alleged that he acted in self-defense. Sheriff Floyd was made a party to the proceeding because of his official position and based upon the proposition that the sheriff is responsible for the negligence of his deputy in the performance of his official duty.
Plaintiff's position is that the assault committed upon him was wanton and deliberate, without cause, justification, reason or excuse, having been committed while he was attempting to surrender and submit to an arrest.
Under similar allegations we held, in a companion case, Jackson v. Steen, La.App., 92 So.2d 280, under the legal injunction of accepting as true all well-pleaded facts on the trial of an exception of no cause of action, that a cause of action was stated. The issue now presented is primarily one of fact as to whether plaintiff's allegations are supported by adequate and sufficient proof, such proof as would warrant and justify a judgment in plaintiff's favor. The trial court held that defendant Taylor's action was in the performance of an official duty as deputy sheriff and in self-defense of himself, as well as in defense of fellow officers, and thereby rejected plaintiff's demands. From the judgment thus rendered and signed, plaintiff prosecutes this appeal.
*834 A statement of the facts is deemed appropriate for a comprehension of the issues involved. On trial of the case, the plaintiff produced only himself and Martin L. Jackson, an accomplice in the offense for which their apprehension was sought and for which they claim it was their intent and purpose to surrender and submit to an arrest by the officers. Plaintiff admitted that near midnight he and Jackson had gone to the residence of Trooper Ulis Floyd and that he shot and killed, not only Floyd, but, his son, Donald Floyd; that he was charged with murder and, on trial, convicted of manslaughter and sentenced to and served a term in the State penitentiary. Plaintiff further admitted that, after the shooting, he and Jackson repaired to the residence of a Mrs. Hinton, under the mistaken belief that it was the residence of Carey Pritchard who lived nearby and to whose residence they immediately thereafter went. Pritchard was told that plaintiff had shot Ulis Floyd. Upon Pritchard's request, Pearson and Jackson left Pritchard's residence and walked to the rear, near a strip of woods, where they remained for some 30 minutes.
In the meantime, Sheriff Floyd, a brother of the deceased, Ulis Floyd, and other officers stopped at the Pritchard residence and were informed that Jackson and Pearson had been there. A search in the immediate vicinity proving futile, the officers left and thereafter Jackson and Pearson returned, knocking on the rear door of the Pritchard residence. Pritchard denied them admittance and, on being informed they desired to telephone the officers of their intention to surrender, he advised them he would make the call and for them to await the officers' arrival on the front porch. While Pritchard was telephoning, Pearson and Jackson were seen crossing the highway, at a distance of 100 to 200 yards away, and proceeding in a direction opposite the courthouse. During their maneuvers, Jackson and Pearson went to the residence of a Mrs. Mary S. Buckhalter, where Jackson had a room, and phoned Mrs. Herschel Floyd, whose husband was a deputy sheriff, and informed her they were on their way to surrender. Request was made that their desire be communicated to the officers. Both Jackson and Pearson, at the Ulis Floyd home and at the Pritchard residence, were armed with carbines and Pearson was carrying an automatic pistol. After shooting the Floyds, Jackson and Pearson, in backing away, stuck their automobile in a ditch, after which they set out on foot on the journeys hereinabove detailed.
After learning that Pearson and Jackson had returned to, and, then departed from, the Pritchard residence, the officers made an intensive but unsuccessful search to locate them. About two hours following the shooting, Don Steen and R. C. McGuffee, members of the state highway police, accompanied by Deputy Sheriff Alonzo Taylor, in an automobile of the sheriff's department, driven by Steen, sighted Jackson and Pearson walking along a sidewalk in a wooded area adjacent to U. S. Highway 84. At that time the officers were under the impression the men were heavily armed. They had not been informed of Jackson's call to Mrs. Herschel Floyd nor of Pritchard's conversation with the sheriff. Nor did they have any information that the men desired to surrender. The officers were surprised by the sudden and unexpected appearance of the persons whom they desired to apprehend and arrest, whereupon Steen applied his brakes and brought the automobile to a stop within approximately 30 feet of them. Jackson and Pearson were then behind and out of the lights of the officers' car. The officers called and directed them to approach the front of the car with their hands uplifted. Two, and possibly three calls, were made. These instructions went unheeded.
Jackson and Pearson, according to their own testimony, approached the side of the car, as claimed by them, with their hands up, at least, shoulder height. The officers stated the approach was made by Jackson and Pearson in a semicrouched position, whereupon, as they neared the car, Taylor opened fire with two shots from a carbine *835 rifle, shooting through the front car door, because of his inability to quickly open it. These shots struck Pearson in the abdomen. Jackson then took a course toward the front of the car and Steen, from the left side of the car, shot once, striking Jackson's right arm above the wrist, the bullet making its exit toward the elbow.
After Pearson and Jackson were thus wounded and after they had fallen to the ground, the officers searched them for weapons and, finding none, immediately took them to a local clinic for first aid and then to a hospital in Pineville, where Pearson remained under treatment for approximately two months, during which time he underwent surgery on three occasions. All of the officers testified that when Pearson and Jackson failed to uplift their hands and go within the illumination of the headlights of the automobile they were apprehensive of an impending attack upon them.
For the privilege of self-defense to exist, it is not necessary that the danger actually exist. It is only necessary that the actor have grounds which would lead an ordinary reasonable man to believe it exists, and that he so believe. All the facts and circumstances of the case are to be taken into account to determine the reasonableness of the belief. In Patterson v. Kuntz, La.App., 28 So.2d 278, 282, this principle of law was discussed and plaintiff denied recovery. There it was stated:
"If the evidence submitted by the defendant and his witnesses is sufficient to warrant a finding that he, as a reasonably prudent man, had good cause to believe that the intruder entered the property with an intent to do bodily harm to his wife or his daughter, then it matters not whether plaintiff's son trespassed on the premises for the purpose of relieving himself or to `peep' or to commit acts of violence. It is well settled, even in the common law states, that a defendant using force under a reasonable apprehension of danger is not civilly liable to one whom he has cause to believe is his assailant even though it subsequently appears that he is mistaken. In 6 C.J.S. § 18, under the title `Assault and Battery,' it is stated at page 812:
"`Where a man reasonably expects an attack from A, and in the exercise of due care mistakes B for A, and strikes B, he is, nevertheless, excused on the ground of self-defense and apparent necessity.'
"The following cases are cited in support of the text: Courvoisier v. Raymond, 23 Colo. 113, 47 P. 284; Paxton v. Boyer, 67 Ill. 132, 16 Am. Rep. 615; Crabtree v. Dawson, 119 Ky. 148, 83 S.W. 557, 67 L.R.A. 565, 115 Am.St.Rep. 243 and Rook v. Koons, Tex.Civ.App., 289 S.W. 1077; Id., Tex. Com.App., 295 S.W. 592. See also Prosser on Torts, Section 17, pages 114 and 115.
"Hence, as aforesaid, it is unimportant that we determine the intent of Patterson although it is apparent, from a consideration of all of the evidence in the case, that the District Judge was not at all impressed with the young man's statement."
In the aforesaid case, the court took cognizance of the circumstances surrounding the shooting of plaintiff's son, circumstances that had existed and continued for a period of over a year prior to the wounding of plaintiff's son. The ruling in Patterson v. Kuntz, supra, was followed in Smith v. Delery, La.App., 98 So.2d 899, in which the facts were stated as follows:
"At 4:15 o'clock on the morning of October 12, 1953, Wayne R. Smith, a fourteen year old newspaper delivery boy, was shot and very seriously and permanently injured by Edward J. Delery at whose residence young Smith, a short time before, had delivered a morning newspaper and whose defense to this damage suit is based on the contention that, because of repeated appearances of prowlers in the neighborhood and because he thought that *836 young Smith, who had gone to the rear of his premises to retrieve his dog, was a prowler and that the safety of himself and the members of his family might be endangered, he was justified in discharging the pistol which unfortunately struck the boy."
In exonerating defendant from liability, the court stated:
"The record convinces us that the boy had done nothing more than attempt to prevent his dog from joining in the barking and that, in perfect good faith, he had done all that he could to retrieve it from somewhere near the rear of the residence.
"However, liability vel non of Delery does not depend upon whether young Smith looked through the window but rather upon the question of whether or not Delery, under all the circumstances, acted as a man of reasonable prudence would have acted. We think that he did.
"It is impossible to express our regret that the young man seems to have been the innocent victim of a chain of circumstances for which he was not to blame.
"When we compare the facts of this case with those found in Patterson v. Kuntz, supra, (28 So.2d 282) it seems that, except for the fact that young Patterson was to some extent himself to blame, there is no distinction between the facts here and the facts there. There the previous occurrences, together with the presence of the young man and his approach towards the Kuntz residence, were held sufficient to justify the action of Kuntz in firing the shots. In that case we found that the intruder failed `to heed (the) warning (to stop),' but continued on in the direction of the bedroom window. Here, though young Smith did not continue in the open towards the window, nevertheless he continued towards a hiding place immediately alongside the house and put himself in a position in which, had he been an intruder with felonious intent, he would have constituted just as great a threat as he would have constituted had he continued directly towards the window."
In analyzing the Patterson and Delery cases, it is obvious from the facts primarily considered by the court in the formation of its opinions that the wounding of plaintiffs' sons was justified were not circumstances immediately preceding the shootings but existed prior thereto. It was the action of a Peeping Tom, who was not necessarily the plaintiff's son, in the Patterson case, and the action of a prowler who had previously trespassed on Delery's property, in the Delery case, that allowed the defendants, as reasonably prudent men under the circumstances, to act. Harper and James' The Law of Torts, Vol. I, Sec. 311, page 239, concisely states the law as pertains to self-defense:
"It is not necessary that the danger actually exist. It is only necessary that the actor have grounds which would lead an ordinary reasonable man to believe that it exists, and that he so believe. All the facts and circumstances of the case are to be taken into account to determine the reasonableness of the belief. The rule that one who reasonably believes the other party intends to assault him is privileged to defend himself although he is in fact in no danger whatever appears to follow the similar rule in the criminal law where it is beyond doubt a sound rule."
At the time Taylor, Steen, and McGuffee suddenly came upon Jackson and Pearson, they had knowledge of these facts: The killing of Ulis Floyd and his son, whose bodies they had viewed at the scene of the killing; that their assailants were heavily armed; and, notwithstanding diligent and extensive searches, they had not been apprehended; and who, upon their sudden appearance, failed to obey orders shouted at them to approach the car in view of the headlights with uplifted arms.
*837 In resolving the question as to whether Taylor acted as a reasonable and prudent man under the aforesaid circumstances, in shooting Luther Pearson, it must be borne in mind that the officers were constantly aware and apprehensive, from having just witnessed the scene of a slain fellow officer, of what attitude Pearson and Jackson would have and the action they would take when apprehended, particularly in view of the fact they knew, at last report, the men to be heavily armed and were unaware of the intent to surrender. Under the facts as detailed hereinabove, it does not appear that Taylor acted unreasonably when Pearson and Jackson disobeyed instructions; failed to approach the car in view of the headlights and with uplifted hands, but approached the side of the car, in the darkness of the night, in a seemingly crouched position. The conclusion is inescapable that Taylor acted through honest belief in the absolute necessity of the course pursued, the belief of a reasonable, prudent man, a belief justified for his personal safety and for the safety of his fellow officers, and we therefore conclude, as did the trial court, that Taylor's action was that of an officer in the performance of an official duty and under the circumstances justifiable under the rule of self-defense.
In reaching the aforesaid conclusion, we are not unmindful of the conflict in testimony, as related by plaintiff and his companion, from that related by the officers as to the manner in which plaintiff was shot. The trial judge heard the testimony and observed the witnesses during the course of the trial. He accepted the testimony of the officers and, incidentally, pointed out there was no improper conduct of the officers toward these men after they were shot. On the contrary, the officers were solicitous of their welfare in procuring immediate medical aid and hospitalization.
The general rule is that the findings of a trial court, upon questions of fact, are entitled to great weight and that, when only issues of fact are involved, such as is the principal issue in the instant case, it is incumbent upon the appellant, in order to secure a reversal of the decision from which he has appealed, to show manifest error in the judgment. Thornton v. Ellington, 209 La. 613, 25 So.2d 282; Falgout v. Johnson, 191 La. 823, 186 So. 349; Lejeune v. Lejeune, 187 La. 339, 174 So. 643; Wagner v. Shannon, 180 La. 233, 156 So. 289; Kruse v. Kruse, 175 La. 206, 143 So. 50; Guillory v. Fontenot, 170 La. 345, 127 So. 746; Currie v. Government Employees Insurance Company, La.App., 90 So.2d 482; Commercial Credit Corporation v. Morris, La.App., 107 So.2d 563; Patton v. Argonaut Underwriters Insurance Co., La.App., 110 So.2d 142; Dane v. Canal Insurance Company, La.App., 116 So. 2d 359.
There has been no such showing of error in the conclusions reached by the trial court and, therefore, the judgment appealed should be, and it is, hereby affirmed at plaintiff-appellant's cost.
Affirmed.