ELLIS, Judge.
Plaintiff has filed this suit for compensation for total and permanent disability as a result of an alleged accident and injury received in an altercation with a fellow employee. The defense to the plaintiff’s suit, which was sustained by the District Court, was made on the basis of LSA-R.S. 23:-1081, which reads in part as follows:
“No compensation shall be allowed for an injury caused (1) by the injured employee’s wilful intention to injure himself or to injure another * * *
Plaintiff has appealed from the judgment of the District Court dismissing his suit.
The sole question before the court at this time is whether, under the facts in this record, the plaintiff’s injury was caused by his wilful intention to injure himself or to injure another.
It is agreed that the facts are simple. Carroll Marks was employed by Patterson Truck Lines on April 25, 1958 in charge of the body shop, and on the same date plaintiff, Isaac Moore, was employed by the defendant company in charge of the wash rack and the equipment on it. On this day Marks and his helper took a car to the wash rack in order to wash and sand it, which was normal procedure before painting. It was necessary that Marks and his helper use one of the hoses on the wash rack and they found it “messed up with grease.” Marks asked plaintiff to wipe the hose off and was told by the latter that it was not his job and he was not going to do it, whereupon Marks told him he would get someone who could get him to do it and, with this, the plaintiff looked at Marks and said “you’re a son-of-a-bitch” and Marks immediately hit him with his bare fist. From the force of the blow plaintiff went back against a cabinet and picked up a pry bar that was there with both hands and attempted to hit Marks but the latter somehow avoided the blow and struck plaintiff, who dropped the bar. After this second blow, Marks walked off, when he heard someone shout from the shop and he turned around and plaintiff had a tire rim and had followed Marks and was about to hit him with the rim. Marks avoided the plaintiff by ducking under and hit him a third time with his bare fist. Plaintiff testified that he called Marks “a son-of-a-gun”, however, Marks’ story and the testimony as above given is fully corroborated by an eye witness, and the District Court accepted the above version.
Counsel for the plaintiff places much importance on the fact that Marks under cross examination admitted that he had been *258 called such a name on other occasions by-other persons and that he did not always strike the speaker. Marks’ testimony was to the effect that he had been called such a name before and had not hit the person every time “because sometimes its playing and there’s a difference between playing and the real business.”
As stated by the District Judge in the reasons he dictated into the record: “There is no indication by any of the parties or the witnesses, that any of the parties was in a playful mood, that everybody was pleasantly disposed, and that they were enjoying each other’s company * * * ”. It is clear from the record that the plaintiff intended to provoke Marks and arouse his resentment, come what may. His actions speak louder than words. After cursing Marks and being struck, he immediately picked up a pry bar and Marks successfully avoided being struck with this by the plaintiff by hitting him again. Marks then turned and walked away from the affray and was warned by a spectator and turned and saw plaintiff with the tire rim advancing upon him again in an attempt to strike him. The words and actions of the plaintiff were not impulsive nor playful. Marks initially had said nothing that should have aroused the plaintiff to-such an extent that he would use such a biting word unless it was deliberate. It can be said to have been premeditated in the sense that plaintiff knew it would arouse extreme resentment and was malicious where there was no reason for plaintiff to have cursed Marks as he did.
The law in such a case has been before the Courts many times and is well settled. Counsel for plaintiff cites the case of Gross v. Great Atlantic and Pacific Tea Company, La.App., 25 So.2d 837. In this case our brethren of the Orleans, now Fourth Circuit, Court of Appeal discussed the jurisprudence at length and concluded:
“We think, after a consideration of all of these cases, that the Louisiana rule is that provocative words may be pointed to as justification for an assault provided those words were such that under the circumstances it should have been assumed that physical retaliation would be attempted. The views expressed by us in Randall v. Ridgley, La.App., 185 So. 632 and in Bacas v. Laswell, La.App., 22 So.2d 591, are consistent with this conclusion.”
* * * * ‡
“If this reasoning is sound then, in an effort to determine who is responsible as the aggressor in an affray which is • commenced by words, it becomes necessary to determine whether the words were such as to justify the conclusion that it should have been anticipated that physical retaliation would be attempted.
“In attempting to determine this all of the facts and circumstances must be taken into consideration because words, which, under certain conditions, might be passed without any expectation of physical retaliation, might, under other circumstances, be looked upon as the certain forerunner of a violent physical encounter.
“In the case at bar we find two negro laborers who had just returned to their respective stations from a meeting at which it had been charged that some employee had stolen sardines from a box in the employer’s warehouse. The words which were spoken were obviously not seriously spoken and neither the word ‘thief’ nor the word ‘steal’ was used. Under all these circumstances, even if they were seriously spoken or even if the employee to whom they were addressed believed they were seriously spoken, we do not think that it could reasonably be anticipated that they would lead to blows. We therefore feel that when Gross walked up to Johnson and slapped his face, he was the aggressor and his act and not the words of Johnson, commenced the affray.”
*259 Counsel for plaintiff also cites Conley v. Travelers Insurance Company, La.App., 53 So.2d 681. In this case it is true that the Court found that the plaintiff had cursed Barnett and used oppobrious epithets upon the occasion of the first difficulty or altercation and that the preponderance of the testimony established the fact that Barnett threatened plaintiff with physical retaliation if he resumed his verbal attack, but the Court stated that it was convinced that there was a definite termination of this incident and a mutual effort at reconciliation to such an extent that the subsequent trouble at or about the noon hour was entirely and distinctly removed, in point of time as well as connection, from the early morning fracas, and that it was established by a preponderance of the testimony that the plaintiff did not directly address his rather general castigation of his fellow employees to Barnett at the time of the physical encounter. The Court then considered the law as found in Section 28 of the Work-mens Compensation Statute, LSA-R.S. 23 :- 1081 and in this connection stated:
“In our opinion the crux of the problem presented is to be found in the answer to this question: ‘Was the plaintiff employee guilty of such words or actions as would be expected to provoke justified physical retaliation by a fellow employee?”
The Court then stated that “after serious and thorough consideration of the established facts and the law applicable, we feel constrained to answer the question in the negative.”
Counsel for plaintiff has also cited Ayo v. Stephens, La.App., 92 So.2d 150 and Wells v. Perkins, La.App., 101 So.2d 740. We do not believe that these cases are factually similar and therefore are not controlling.
We do not think that there is any doubt but that plaintiff should have assumed that physical retaliation would be attempted by Marks. The very words themselves were such as to justify a conclusion that it should have been anticipated that such retaliation would be attempted.
We are not unmindful of the case of Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51, decided by the Supreme Court and in which that court laid down the following test:
“ * * * The test should involve an inquiry into the existence of some premeditation and malice on the part of the claimant, coupled with a reasonable expectation of bringing about a real injury to himself or another. If the retaliation which flows from his misconduct is not such as could be reasonably expected, his intention could not be held to envision that result and hence is not within the purview of the quoted provisions of the Act.
* * * * * *
“It is clear that the action of Velotta here could certainly not be classified as both premeditated and tinged with some degree of malice, which ‘wilful intention’ as used in the statute seems clearly to imply. It appears instead that his actions were impulsive or the result of an instinctive act — the opposite of intentional or premeditated— and hence not ‘wilful.’ In the relationship between fellow employees, it is inevitable that their emotions will cattse friction between them; and if on such occasions impulsive action provokes retaliation which causes injury, that impulsive action should not preclude the assertion of a claim under the Act. The use of the word ‘Shorty’ by Bailey in referring to Velotta, a much older man, gave normal cause for resentment, not only in the ridicule implied in the appellation itself, but, it is not unreasonable to assume, in the tone and manner of its use, and in its source, coming from a young Negro and directed to a much older white man. Therefore, when Velotta responded as he did, his actions did' not manifest ‘wilful inten *260 tion’ to injure another, although those actions may not have been entirely blameless under the circumstances. ‡ }¡J j|í »
Applying the above test to the facts in the case at bar there was no provocation for the plaintiff to call Marks a son-of-a-bitch and it was, therefore, done deliberately and the very epithet itself convicts the plaintiff of malice and a reasonable expectation of bringing about a real injury to himself or Marks, for the retaliation by Marks which flowed from plaintiff’s misconduct, which was uncalled for and therefore deliberate and malicious, was such as could be reasonably expected, and plaintiff’s intention could be held to envision such a result and hence is within the purview of the quoted provisions of the Act.
Under the holding of the Supreme Court in the Velotta case, had Marks been injured as a result of his natural resentment and retaliation for having been cursed by plaintiff for a son-of-a-bitch, he could have recovered under the Compensation Act. He would have had a stronger case factually, than Velotta, for all that the co-employee called Velotta was “Shorty”, which the court held gave normal cause for resentment on the part of Velotta and that when Velotta immediately and impulsively either threw or swung a pair of trousers at the co-employee, striking him about the face, that such action did not manifest “wilful intention” to injure another. It constituted impulsive conduct.
Therefore, if we concede for the sake of argument that Marks should not have struck plaintiff, under the Velotta case, for cursing him, the blow was impulsive and would not have barred his recovery of compensation had he been injured, if plaintiff’s subsequent acts were done with the wilful intention of injuring Marks or getting injured.
For the above and foregoing reasons the judgment of the District Court is affirmed.
Affirmed.