219 So.2d 584 (1960)
George C. BUCHERT
v.
METROPOLITAN LIFE INSURANCE COMPANY, St. Louis Fire and Marine Insurance Company, Travelers Insurance Company, Hector Fontana and Edward Melancon.
No. 3380.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1969.
*585 Leonard A. Calcagno, New Orleans, for plaintiff-appellant.
Robert I. Broussard, Gretna, for defendant-appellee, Hector Fontana.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John C. Combe, Jr., New Orleans, for defendants-appellees, Metropolitan Life Ins. Co. and The Travelers Ins. Co.
Wicker, Wiedemann & Fransen, A. Remy Fransen, Jr., New Orleans, for defendant-appellee, Edward Melancon.
Before SAMUEL, BARNETTE and JOHNSON, JJ.
JOHNSON, Judge.
The plaintiff filed this tort action against defendant to recover damages for bodily injuries inflicted upon plaintiff by defendant Hector Fontana in a fist fight on July 1, 1964. After trial the Civil District Court of Orleans Parish rendered judgment in favor of defendants dismissing plaintiff's suit. The plaintiff has appealed.
Plaintiff and defendant Hector Fontana were both employed as insurance salesmen by defendant Metropolitan Life Insurance Company. The following named persons and concerns are made defendants herein and for a cause of action against each defendant plaintiff alleges that the Metropolitan Life Insurance Company knew, through its agents and employees, that Hector Fontana was a person of arrogance and bad temper and to continue him in its employ was a violation of Metropolitan's obligation to furnish plaintiff a safe place to work; that Hector Fontana committed a battery on plaintiff causing personal injuries; that St. Louis Fire and Marine Insurance Company was the public liability insurer of Hector Fontana; that Edward Melancon was the assistant manager of Metropolitan and he assumed the protection of plaintiff from harm at the hands of Fontana, and plaintiff, believing he was safe, was caught off guard and was beaten by Fontana when Melancon failed to stop him and failed to warn plaintiff of his danger, and that plaintiff is entitled to collect damages from said defendants in solido. Plaintiff alleges in the alternative that if it *586 is held that Metropolitan is not liable in damages to plaintiff then plaintiff is entitled to collect workmen's compensation from Metropolitan and its compensation insurer, defendant Travelers Insurance Company.
Defendant St. Louis Fire and Marine Insurance Company filed a motion for summary judgment in its favor alleging that there is no genuine issue as to any material fact as between mover and plaintiff with respect to whether or not mover afforded any insurance covering Fontana's liability for his acts. Mover attached a copy of the insurance policy issued by it to Fontana, which policy contains a special exclusionary clause providing that the policy does not apply to bodily injury or property damage caused intentionally by or at the direction of the insured. After trial of the rule nisi ordering all other parties to the suit to show cause why summary judgment should not be rendered as prayed for, the district court rendered judgment on January 21, 1966, dismissing plaintiff's suit as to that insurance company. There has been no appeal from that judgment and it is now final.
In a suit of this kind involving damages suffered by one person resulting from personal injuries inflicted by another person in a fight between the two parties it is necessary to determine, if possible, which one of them was the immediate aggressor, and if the blame rests on the one injured, did the one causing the injury use or respond with excessive force beyond that necessary to defend himself. Gallagher v. Taylor, La.App., 203 So.2d 773, (775); Bauman v. Heausler, La.App., 188 So.2d 189, and authorities therein cited; Muller v. Zimmer, La.App., 155 So.2d 470.
Plaintiff and Fontana occupied separate private offices next to each other and both offices opened into a rather narrow hall. Coming out of plaintiff's office one would turn to the right to go to Fontana's office or to the office of Mr. Pelzer, the manager, and one would turn to the left to go to the door nearby leading outside the building into the parking lot. Sitting at plaintiff's desk in his office plaintiff faced the door leading into the hall and on this day plaintiff was seated at his desk transacting office business with a secretary, Mrs. Marlane Plaisance, who was seated at the end of the desk to plaintiff's left.
There were four people who were in position to know what happened on this occasion, the plaintiff, defendant Fontana, defendant Melancon, and the secretary, Mrs. Plaisance.
The plaintiff testified (in substance) that while he was talking on the telephone defendant Fontana stormed into plaintiff's office and in a loud, boisterous voice, wanted to know when the secretary would be through to come to his office and demanded that she come immediately because he needed her. Plaintiff interrupted his telephone conversation to say to Fontana that if he had any common decency he would let plaintiff finish his conversation and to "please leave my office," and he left. About that time the assistant office manager, Edward Melancon, came into plaintiff's office and plaintiff proceeded to report and complain to him about the manner in which Fontana so rudely interrupted while plaintiff was talking to a policyholder on the telephone. At that point Fontana came tearing into the office "madder" than he was before and demanding that the secretary be released to him immediately.
Plaintiff said Fontana came around the desk and hit him on the shoulder which almost upset him. Plaintiff told Fontana never to do that again and to "keep his hands off of me." Fontana told plaintiff that if he were not so small "I would beat the hell out of you." Plaintiff said he then took off his glasses and his wrist watch and stood up. (Plaintiff explained that the reason he took off his wrist watch was that it had belonged to his deceased father and that he dearly loved his father). Fontana then invited plaintiff outside, saying that "I am going to give you the whipping *587 of your life." With that Fontana walked out of the office, turned to the left in the hall toward the door to the parking lot. Plaintiff said he could hear him cursing and screaming, inviting plaintiff to "come out here and I will beat the living hell out of you." Plaintiff said he previously had suffered two heart attacks and he had angina pains when he got nervous. At this time he began to have pain in his arms and he put two pills under his tongue to relieve it. Plaintiff then proceeded toward the door allegedly to go to see Mr. Pelzer, the office manager, about some business that plaintiff was to report on that afternoon. Defendant Melancon, who was still in the office, thinking that plaintiff was intending to follow Fontana outside, stopped plaintiff and would not let him go out of the door. Plaintiff does not say that he told Melancon, who was holding him back, that he intended to go to the manager's office on business. (Melancon testified that plaintiff was cursing Fontana and trying to get by Melancon into the hall all the time). Plaintiff said he started to return to his desk but about that time Fontana came back to plaintiff's office door, and pointing a finger at plaintiff, said that he (Fontana) had wanted to beat plaintiff up ever since plaintiff came to that office and Fontana started to go after plaintiff. According to plaintiff Melancon did not grab Fontana at that time but grabbed him instead. Plaintiff said he was not in shape to fight because he was in pain and had no intention of fighting and did not proceed toward Fontana. Plaintiff said his intention was to go out of the door to go to the manager's office on business. "Fontana came at me again, and I was pushed, sortI sort of threw myself to the side with Fontana holding on to me." He said they danced around in the office four of five times with Fontana in pursuit. Finally plaintiff said he told Melancon to grab the man because he was a wild man. Melancon grabbed Fontana and pushed him into the hall to the left of plaintiff's door. Plaintiff said he thought Melancon had the man secure and plaintiff went into the hall and turned to the right. He stated he made two steps when he heard scuffling and got a lick on the back of his head. Fontana then got his left arm around plaintiff's neck, pulled plaintiff around and began to strike him in the face with his right fist while holding plaintiff around the neck. Plaintiff's face was badly cut and blood was splashing on the walls and floor. Plaintiff's little finger got hurt in the fight. Plaintiff said he managed to get one hand to Fontana's face and was trying to push him away. Pretty soon two men came and separated the fighters.
Fontana testified that he went to plaintiff's office the first time to check with the secretary about some business that had to be taken care of at that time. He said Mrs. Plaisance was not busy but was sitting at the desk while plaintiff was talking on the telephone. He conversed with her about the business he had given her in his office earlier that day, and, receiving her answer, he left plaintiff's office returning to his own office without having had any words whatever with plaintiff. Some minutes after that Melancon had gone into plaintiff's office and Fontana heard plaintiff in a very loud voice complaining and "running him down to Mr. Melancon, stating that I had insulted him and his policyholder while he was on the phone, which, of course, was not my intention to do, and to my knowledge, I definitely did not insult he or his client that was on the phone." When he heard this he returned to plaintiff's office and standing in the door he apologized and told plaintiff that if he did insult plaintiff's policyholder, "believe me, I am sorry." He further said that he told plaintiff that he had so much work to do that he needed the secretary and, "besides, George, you know I have the use of the clerical aide on Wednesdays." He said there had been an agreement to that effect. With that plaintiff got very much enraged and in foul language said he did not want the use of the girl any more. He accused him in a very insulting way of being the millionaire producer of the company and *588 said Fontana could do anything and get away with it. Fontana said he asked him if he realized what he had said. With that plaintiff jumped up from his chair, flung his glasses across the desk in an act of aggression and in very foul language in the presence of Mrs. Plaisance said that he knew "exactly" what he had said. Fontana said that he walked into plaintiff's office and stood at the side of plaintiff's desk. Plaintiff again became very much enraged and was using "very, very foul language, very, very bad." Fontana said that plaintiff told him "not to put my hands on him, though I didn't even come close to putting my hands on him." Fontana said: "George, if you weren't so small, I would take you outside and take care of you, and with that I walked out of his office." Fontana said he proceeded up the hall when plaintiff started to come at him and Melancon grabbed hold of plaintiff. He could hear them scuffling. He walked to the door leading to the parking lot. He could hear plaintiff cursing, calling him all kinds of names, at which time he turned and came back up the hall. As he passed plaintiff's door Melancon was struggling with plaintiff to keep him from "getting at me." When Melancon saw Fontana, Melancon turned and grabbed him and the three of them were scuffling at the door, at which time Melancon was holding Fontana in the hallway. Then plaintiff came through the door behind Fontana. Fontana pushed Melancon away and turned to see where plaintiff was, "at which time plaintiff punched me in the face." From that point they went to fighting in the hall. During the fight Mrs. Plaisance came to the door and yelled "Hector, he is going to pull your eyes out." She said that because plaintiff, "was clawing at both my eyes and nose." In his testimony Fontana repeatedly referred to the bad language used by plaintiff before the fight, calling Fontana very ugly, vulgar and profane names. He explained, however, that he was not a man that was easily stirred into physical combat and that it was not these insulting names that provoked him into the fight. He said the only reason he returned the battle was because plaintiff punched him in the face.
The gist of Melancon's testimony is that when he was in plaintiff's office, plaintiff accused Fontana of being rude and showed no courtesy to the policyholder to whom plaintiff was talking on the telephone. At that time Fontana came to the door and while standing in the door apologized to plaintiff for what had happened. Plaintiff continued accusing Fontana of being a big shot around the office, the big millionaire, the one who could do as he pleases and so forth. With words back and forth between them plaintiff closed his book and threw his papers down on the desk, took his glasses and his watch off and laid them on the desk and jumped up. At that time Fontana told him "if you wouldn't be so small I would beat you up." The plaintiff answered: "well don't leave that stop you." Melancon said he tried to stop their argument but to no avail. Fontana went down the hall to go outside through the back door and plaintiff came from behind his desk, going toward the door. Melancon said he got in the door and forceably kept plaintiff from going out. Fontana came back and plaintiff was cursing him and Fontana was answering him in the argument. Plaintiff was trying to get to Fontana who had come to the door of plaintiff's office. Fontana was challenging plaintiff to come out and Melancon was forceably pushing plaintiff back with both hands on plaintiff's shoulder. Plaintiff was reaching over Melancon's shoulder trying to get at Fontana. Melancon said they both wanted to fight. He quoted plaintiff as using very vulgar and obscene language. After Fontana showed up in the door of plaintiff's office Melancon turned and got hold of him and pushed him back into the hall, and when he did that plaintiff slipped by him and got into the hall. Fontana pushed Melancon to the side, throwing Melancon off balance against the door. Melancon said when he regained his composure Fontana and plaintiff were fighting in the hall. *589 Melancon then went for help and two other agents came and stopped the fight. Melancon and another agent took plaintiff to the washroom and cleaned the blood off his face. When they came from the washroom they passed along the hall by Fontana's office and plaintiff stopped at the door and "called Fontana a [using very vulgar adjectives] nigger. If it wouldn't have been a fight in close quarters it would have been a different fight."
Mrs. Plaisance, the secretary, testified that when Melancon came into plaintiff's office plaintiff told Melancon about how Fontana had carried on in the office while plaintiff was talking over the telephone to the policyholder. Fontana had only asked how long it would be before the secretary could go to his office because he had a lot of work to get out. There was no violence on that occasion at all. When Melancon came in plaintiff told Melancon that Fontana was very rude and discourteous to him. Plaintiff was talking loud and Fontana heard him. Fontana then came back to the office and plaintiff told him that he was a big wheel in the office, the millionaire and that he could do anything and get away with it. Fontana said: "George, I am supposed to have the clerical aide today anyhow." Melancon said: "George, you know that is right." She said plaintiff then got mad, put down his papers and took off his glasses and watch and again directed loud and foul names to Fontana, and she repeated some of them. Fontana got peeved and said: "if you were not such a little man I would take you outside and whip you," and plaintiff told him not to let that stop him. With that Fontana left the office and went to the parking lot. She could hear the door slam. Plaintiff tried to follow him and Melancon stopped plaintiff at the door by getting in front and putting his hands on plaintiff's shoulders. When plaintiff did not follow Fontana outside, Fontana came back and was walking in the hall to go to his office. When he passed plaintiff's door plaintiff was ranting and raving and calling Fontana names and said he wanted to go out there and fight. He was reaching over Melancon's shoulders trying to get to Fontana. Fontana heard that and came back. Melancon then turned around and held Fontana to keep him from getting at plaintiff. When Melancon did that plaintiff passed by him and got into the hall. Fontana pushed Melancon away, back into the office. Fontana turned around and they started fighting. Melancon pulled himself together and went for help. The witness looked in the hall and saw that Fontana had plaintiff with a headhold and plaintiff was clawing at Fontana's eyes. She hollered for them to stop and went back into the office. After they had taken plaintiff to the washroom and were going down the hall passing Fontana's office she heard plaintiff tell Fontana that he fought like a (foul named) nigger and if it had been outside instead of in close quarters it would have been a close fight. She was asked by counsel if at any time she heard plaintiff or Fontana say he did not want to fight and she answered: "No, they both wanted to fight."
After this occasion plaintiff was dismissed from his job by Metropolitan. Fontana still works there. Mrs. Plaisance quit her job and went to work for Dalton Steamship Company. The manager of Metropolitan later asked her to come back and she quit the Dalton Steamship Company and went back to work for Metropolitan.
Two days after this fight plaintiff and and his attorney called on Mrs. Plaisance and in the presence of her husband, at her home, she gave plaintiff a written statement about the incident. That statement was somewhat more favorable in tone and content to plaintiff than her testimony as a witness at the trial of the case. However, there is not enough difference between the written statement on July 3, 1964, and her testimony at the trial in November, 1966, to enable us to disregard her testimony entirely. Brushing aside all the evidence describing the preliminary skirmishing, cursing, name calling, verbal cross-fire *590 challenges and boisterous ill temper on the part of both parties and coming right down to the point of combat it is impossible to make a clear determination of blame. We cannot overlook the fact that after the first visit of Fontana to plaintiff's office Fontana returned and apologized for whatever happened on that first visit when plaintiff was using the telephone. Plaintiff did not let the matter rest there as he should have done. Plaintiff claims that he was struck on the back of his head from behind by Fontana after plaintiff had passed out of the door and, he says, was going away from Fontana, heading to the manager's office to transact office business. All we can say about that is, in view of what had transpired up to that point, it is beyond human conception to believe that plaintiff at that moment could be so mentally composed as to have business details uppermost in mind.
On the other hand, Fontana says that the fight did not start until plaintiff came into the hall behind Melancon and punched Fontana in the face while Melancon was pushing and holding Fontana back to keep Fontana from getting to plaintiff. It is, indeed, strange that neither Melancon nor Mrs. Plaisance could say which one of these two men passed the first lick.
We have given a fuller summary than is usual in this type of case. We do it to present the conflicting pictures disclosed by the testimony. We can and do discount to some extent the versions by the parties and witnesses and, boiling the descriptions of what happened down to what we believe to be most likely the truth, there is no way we can resolve the controversy in favor of or against either party. The trial court could not do it and the evidence is such that we cannot hold otherwise. Both parties were equally and concurrently to blame for the physical battery on each other. Also, it is evident that plaintiff suffered rather serious injuries at the hands of defendant Fontana, but it is impossible to say that Fontana employed excessive force in view of plaintiff's apparent willingness and eagerness to leave the safety of his own office and go into the hall where he knew that defendant was ready and willing to fight. For plaintiff to say that he went into the hall to go to the manager's office on business only because he thought Melancon held Fontana safe and secure is a little short of ridiculous. Reynolds v. Roy, La.App., 215 So.2d 155; Johnson v. Princeville Canning Co., La.App., 205 So.2d 449; Oubre v. Judice, La.App., 147 So.2d 745; Moore v. Travelers Insurance Company, La.App., 143 So.2d 256; Stothart v. Louisiana-Arkansas Ry. Co., 127 La. 409, 53 So. 668.
There is no testimony that defendant Melancon was guilty of anything except an effort to keep these two men from getting together. In this he was trying to serve both parties. There is no evidence to support plaintiff's claim as against defendant Melancon. Plaintiff's counsel admitted as much in his argument in this court.
Plaintiff has no claim for damages against his employer. His exclusive remedy, if any, is for compensation. The employer was insured for liability for compensation by defendant Travelers Insurance Company. Neither the employer nor its compensation insurer in this case is liable for compensation to plaintiff because plaintiff's wilfull intention was to engage in a fight which he knew, or should have known, would injure himself or another. LSA-R.S. 23:1081.
For these reasons the judgment of the trial court appealed from is hereby affirmed. The plaintiff is to pay the costs.
Affirmed.