248 So.2d 7 (1971)
Hal F. McCULLOUGH et al.
v.
Shelton B. McANNELLY.
No. 8297.
Court of Appeal of Louisiana, First Circuit.
April 19, 1971.
Rehearing Denied May 31, 1971.
*8 Robert L. Kleinpeter, Baton Rouge, for appellants.
Sam D'Amico, of D'Amico & Curet, and James E. Moore, of Franklin, Moore, Beychok & Cooper, Baton Rouge, for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
Rehearing En Banc Denied May 31, 1971.
ELLIS, Judge.
This is a suit by Mr. and Mrs. Hal F. McCullough against Shelton B. McAnelly for the wrongful death of their son, Mark McCullough, who was killed by Mr. McAnelly on the evening of August 20, 1968, under circumstances which will be hereinafter set forth in detail. Judgment was rendered in favor of plaintiffs and against defendant, and defendant has taken an appeal to this court.
Plaintiffs' son was one of a group of boys, who, on the evening in question, had been engaged in throwing eggs at passing automobiles and at least one boy on a bicycle. At some time after 11:00 o'clock, they arrived at a vacant house on Monterrey Boulevard across the street from the home of the defendant herein. They testified that they intended to throw some eggs at automobiles from that point. They were observed going into the yard by Mrs. McAnelly, who sent her sons, Michael and Robert, to see what the boys were doing there. When approached, the boys ran, and one of them, probably plaintiffs' son, threw an egg at Robert McAnelly, the younger of defendant's sons.
At that time, or shortly thereafter, Mr. McAnelly, fearing that the boys were going to break into the vacant house, asked his wife to call the police. She did so, and on one or more occasions thereafter, without eliciting any response. During the remainder of the time before the shooting, the McAnellys remained in their front yard, awaiting the arrival of the police.
Shortly after the boys had been chased, the automobile from which they had alighted was seen parked nearby. Michael went to get the license number, but he found the plate to be covered with a cloth. The vehicle, which was driven by Ronald Maggio, drove off rapidly when Michael approached. During the time that the McAnellys were in their yard, Mr. McAnelly observed several groups of boys in the general vicinity. It was during this time that he became alarmed and went into his house and armed himself with a 9mm. Luger semi automatic pistol. He put the pistol, unloaded, in one pocket, and loaded clips in another.
Shortly thereafter, the same group of boys, now riding in an automobile operated by Joe Fricks, decided to return to the McAnelly home in order to find out why they had been chased. The district judge found that they were looking for trouble when they did so. They drove past the McAnelly home and observed the entire family within the front yard. Thereupon, they drove around the block, and approximately a block away from the McAnelly home, Mark McCullough and another boy got out of the car for reasons which the boys were unable to explain. The remaining four boys, with Fricks and Maggio in the front seat and two others in the back seat, drove to the McAnelly home and pulled up in front of the driveway. There then followed a conversation in which at least one of the boys in the car used obscene language in addressing Mr. and Mrs. McAnelly. When Michael McAnelly told him not to talk to his parents like that and advanced a couple of steps toward the car, Ronald Maggio got out of the car and a *9 fight ensued between the two. After the fight started, Joe Fricks got out of the car on the left hand side and went to where the boys were fighting, in the street behind the car. Maggio had Michael pinned to the guage in addressing Mr. and Mrs. Mclough and the other boy who had gotten out of the car, ran across the street to the scene.
After the fight started, Mr. McAnelly testified that he drew his gun, held it up in front of him, loaded it, and said, "I've got a gun", or something to that effect. He testified that no one paid any attention to his warning. He saw three boys grouped around his son, who was on the ground, and was of the opinion that they were beating him and kicking him. He aimed his gun at the group of boys and fired two shots, one of which wounded Joe Fricks. The other killed plaintiffs' son.
The testimony of the boys involved in the case was to the effect that they had gone back to the house to find out why they had been chased and that when they inquired, Michael McAnelly had come over to the car and had swung at Ronald Maggio, who was then sitting in the car. They said that Maggio had gotten out of the car in order to defend himself. Joe Fricks testified that he had gotten out of the car in order to stop the fight because he felt that things had gone too far, because the two McAnelly daughters were screaming in the front yard. The boy who had been with Mark McCullough testified that he had not engaged in the fight, and Joe Fricks testified that he had not even gotten near the two boys when he was shot. Maggio did admit that Mark McCullough kicked Michael at least once. Michael testified that after the fight when he got up, there seemed to be six or eight boys around him.
Two boys remained in the back seat. They testified that they saw the gun when Mr. McAnelly loaded it and fired it.
Mrs. McAnelly testified relative to the abusive and obscene language used by the boys when they stopped in front of the house, and also testified that after the scuffle started, there were several boys on top of Michael beating him. She said that she was attempting to pull them off of him and was unsuccessful in so doing. She had left the scene of the fight temporarily in order to get a garbage can lid with which to protect him, when the shooting occurred. She received a number of bruises in the fight.
A Mr. Vicknair, who was a nearby neighbor, heard the commotion and came out of his house. He had a pistol, because he had previously been warned by Michael McAnelly of the boys in the back yard of the vacant house, which was immediately adjacent to his own. Mr. Vicknair said he saw what appeared to be six or eight boys gathered around someone and that there was obviously a fight going on. He testified that he could hear the two McAnelly girls screaming, "They are beating him, they are beating him." He was about to fire his own gun into the air in an effort to stop the trouble when he heard the two shots fired by Mr. McAnelly.
Mr. McAnelly's own testimony is that he thought they were beating and kicking his son, and that he was in danger. He admitted that he could not specifically see any one kick Michael because there were three boys around him at the time that he fired.
The district judge found that the boys had indeed come to the McAnelly house looking for trouble, that they had used obscene language in talking to Mrs. McAnelly, and that Ronald Maggio had attacked Michael McAnelly when he told him to stop using that kind of language to his parents. However, he was of the opinion that the action of Mr. McAnelly in firing a gun at the boys who were standing over his son constituted an unreasonable use of force under the circumstances. He therefore gave judgment in favor of plaintiffs.
From the foregoing, we agree with the district judge that the boys were looking for trouble when they returned to the McAnelly *10 home, and that they, including plaintiffs' son, were the aggressors throughout the difficulty which followed. We think that they deliberately set out to intimidate and terrorize the McAnelly family.
The law applicable in this situation is clear and well settled. Article 236 of the Civil Code provides:
"Fathers and mothers may justify themselves in an action begun against them for assault and battery, if they have acted in the defense of the persons of their children."
In the recent case of Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969), the court said:
"It is correctly stated in Alexander v. McCray (La.App.), 190 So.2d 463 that `the law is well settled in actions for damages for battery that a plaintiff cannot recover damages for such battery if the evidence establishes that he is at fault in provoking the difficulty in which the injury complained of is received. See Oubre v. Judice (et al.) (La.App., 1962) 147 So.2d 745, and the cases therein cited.' Also pertinent are Stothart v. Louisiana-Arkansas Railway Company, 127 La. 409, 53 So. 668 and Johnson v. Princeville Canning Company et al. (La. App.), 205 So.2d 449.
"It is equally well settled that even where there is an aggressive act, justifying a battery, the person retaliating may use only so much force as is necessary to repel the aggression; and that if he goes beyond this, he is using force in excess of what would have been reasonably necessary, he is liable for damages for injury caused by the employment of such unnecessary force. Oakes v. H. Weil Baking Company et al., 174 La. 770, 141 So. 456, Whittington v. Levy (La.App.), 184 So.2d 577, Bauman v. Heausler (La. App.), 188 So.2d 189 and Mut v. Roy et al. (La.App.), 185 So.2d 639.
"Of course, each case depends on its own peculiar facts and circumstances; and resort must be had to the evidence to determine who was the aggressor and whether more force than necessary was used to repel the aggression."
We find the following judicial declarations to be pertinent:
"Of course, resort to the use of a dangerous weapon in order to repel a supposed attack upon a defendant's person or that of persons to whom he owes a duty to protect cannot be countenanced as justifiable save in exceptional cases where the actor's fear of the danger is not only genuine but is founded on facts which would be likely to produce similar emotions in men of reasonable prudence." Patterson v. Kuntz, 28 So.2d 278 (Orl. La.App.1946).
"For the privilege of self-defense to exist, it is not necessary that the danger actually exist. It is only necessary that the actor have grounds which would lead an ordinary reasonable man to believe it exists, and that he so believe. All the facts and circumstances are to be taken into account to determine the reasonableness of the belief." Pearson v. Taylor, 116 So.2d 833 (La.App. 2 Cir. 1959).
"It was sufficient that he reasonably believed the danger to his brother's life to be imminent. Given this belief based on reasonable grounds, immunity from liability is not judicially withdrawn because some other reasonable man may have perceived the idea of disabling the assailant instead of shooting him. Detached reflection, or a pause for consideration, cannot be demanded under such trying circumstances which by their very nature require a split second decision. To reason otherwise would establish a premise totally unrelated to normal human conduct under the stress of a spontaneous overflow of powerful emotions." Wilson v. Dimitri, 138 So.2d 618 (La. App. 4 Cir. 1962).
In the light of the foregoing, we find that if it was reasonable for Mr. McAnelly *11 to believe that he or his family was in immediate danger of death or bodily harm, he was justified in using reasonable force in order to repel the attack.
In Patterson v. Kuntz, supra, and in Smith v. Delery, 238 La. 180, 114 So.2d 857 (1959), men who shot and wounded prowlers on their property, who made no overt threat toward them, were found to be justified in their actions because of circumstances, unconnected with the trespass, which gave them reason to be apprehensive. In Wilson v. Dimitri, supra, the defendant fired at and wounded a man who had his brother on the ground and was choking him. In Pearson v. Taylor, supra, sheriff's deputies shot and wounded two men wanted for murder, but who were, unknown to the two deputies, unarmed and attempting to surrender. In the latter two cases, the force used was found to be reasonable under the circumstances.
We find that in this case Mr. McAnelly had more reason to be apprehensive than did defendants in any of the above cases. Here, his family was subjected to a direct physical attack by a gang of boys. He had every reason to believe them to be in danger and had no other means at his disposal for their defense. He attempted to warn the boys that he had a gun. His wife and daughters were frightened and screaming, and at least three boys appeared to him to be beating his son. We think that, under all of the circumstances of this case, the force used by Mr. McAnelly was justified and his actions those of a reasonable man who had been subjected to the same experience.
The judgment appealed from is therefore reversed, and there will be judgment herein in favor of defendant and against plaintiffs, dismissing their demands at their cost.
Reversed and rendered.
BLANCHE, Judge (dissenting).
The trial judge found from the evidence that the shooting of young McCullough was unjustifiable. In so holding, he stated in Written Reasons for Judgment:
"* * * the Court is of the opinion that Shelton B. McAnelly was in error and that his action in firing his pistol at the youths was unwarranted and unreasonable in view of the prevailing situation and circumstances herein described. Primarily the Court reaches this conclusion based upon its belief that the force used was not only premature but excessive,[3] and that no warning of any substantial nature was given by him to the boys at any time. To justify the use of a deadly weapon against an attacker, the user of such instrumentality must show danger or apparent danger of death or of great bodily harm.[4] At no time was any member of his family in serious risk of death or grave bodily injury. This in effect was acknowledged by his son Michael." (Written Reasons for Judgment, Record, pp. 66, 67)
The majority is not in disagreement with the factual findings of the trial judge, they only disagree with the conclusions to be drawn from those facts, and have concluded that Mr. McAnelly was justified in shooting young McCullough.
Neither is there any disagreement with the law, as the majority quotes those cases holding that even where there is an aggressive act, justifying a battery, the person retaliating may use only so much force as is necessary to repel the aggression; and that if he goes beyond this, he is using force in excess of what would have been reasonably necessary and he is liable for damages for injury caused by the employment of such unnecessary force.
If the law makes actionable only an unreasonable force to repel aggression, then under the evidence the conclusion of the trial judge was justified and we should not second-guess him on a factual finding susceptible of two interpretations in the *12 absence of manifest error. The case of Patterson v. Kuntz, 28 So.2d 278 (La.App. Orl. Cir. 1946), sets out when resort to a dangerous weapon may be used to repel a supposed attack upon a defendant's person or that of persons to whom he owes a duty to protect. There it is stated that the use of such force cannot be countenanced as justifiable save in exceptional cases where the actor's fear of danger is not only genuine but is founded on facts which would be likely to produce similar emotions in men of reasonable prudence.
Neither the trial judge nor this writer has found the circumstances of the case such as to justify the use of a dangerous weapon by Mr. McAnelly.
For the above and foregoing reasons, I respectfully dissent.
NOTES
[3] Bauman v. Heausler, 188 So.2d 189
[4] Barbagallo v. Amer. Corp., 299 N.Y.S. 2d 626" (Footnotes by the trial court)