290 So.2d 803 (1974)
Bobby Gene MULLINS
v.
William PENCE et al.
No. 9689.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
Rehearing Denied March 22, 1974.
Writ Refused May 17, 1974.
*804 Neil H. Mixon, Jr., Baton Rouge, for appellant.
Joe E. Thompson, Baton Rouge, for appellees.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
CRAIN, Judge.
The matter before us involves a suit in tort for a battery by plaintiff-appellant, Bobby Gene Mullins, against William E. Pence, his employers, Charles H. Hebert, John U. Rochester, Community Cash Drug Store, a partnership, Hebert Drug Company, Inc., and Security Insurance Company of Hartford, the alleged liability insurer of the defendants. The defendant-appellees Charles H. Hebert and John U. Rochester, both individually and doing business as Community Cash Drug Store, a partnership and Hebert Drug Company, Inc., all defendants in the main demand, filed a third party petition against Security Insurance Company of Hartford alleging that they were covered under a liability insurance policy issued by that company, and further alleging that the third party defendant had not provided a defense for them making it necessary for them to hire counsel to represent them in the main demand. They therefore requested that the court grant to them a reasonable attorney fee for the third party defendant's breach of its contractual obligation.
The trial court decided the matter in favor of defendants rejecting the plaintiff's demands and further awarded to the defendants above mentioned a judgment on the third party demand against Security Insurance Company of Hartford for a reasonable attorney fee of $1820.00. From the judgment rendered, an appeal was perfected by the plaintiff. No appeal was taken from the judgment on the third party demand.
This suit arises from a shooting which occurred on the premises of Community Cash Drug Store. The store is a combination drug and liquor store operated as a partnership by owners, Charles H. Hebert and John Rochester. The facts as found by the trial court are summarized in its reasons for judgment which we quote with approval as follows:
"On the afternoon of January 15, 1970, after leaving work, plaintiff went into the liquor store, which sells alcoholic beverages by the drink or by the bottle. He had been drinking off and on most of the day. Later in the evening, Pence, the bartender on duty, had some difficulties with plaintiff over a spilled drink. Testimony of reliable witnesses clearly shows that Mullins had been belligerent through the day. After Pence asked Mullins to leave Mullins refused. Pence then called the police, hoping they would eject Mullins from the premises.
Parenthetically, Charles Norwood, a disinterested witness whose testimony has been accorded great weight, testified that Mullins had been belligerent and in fact was involved in an altercation with a crippled man in the bar shortly before the difficulty between Pence and Mullins arose.
After Pence called the police but before they arrived, Mullins and his wife turned to leave the bar. The testimony *805 of Mullins indicated that he thought he heard Pence say something else to him as he was on his way out of the bar. Mullins, according to the most reliable testimony, looked back while near the front door and saw Mr. Pence walking toward the end of the bar away from him. Mullins then turned and followed Pence to the end of the bar. When Pence had retreated all the way to the end of the bar, Mullins walked up to the bar and indicated that he wished to continue talking to Pence (who, being in a corner behind the bar, had no direction in which to retreat).
The evidence clearly established that, at about this point in the conversation, Mullins told Pence that he was, in effect, going to tear off his arm and beat him over the head with it.
During the trial the court was especially impressed with the difference in the physical size and condition of Pence and Mullins. Plaintiff, a boiler maker, is six feet tall and weighed approximately 215 pounds, while Pence is, on the other hand, approximately five feet four inches tall and weighed 145 pounds. Additionally, Pence is crippled, with one leg being approximately five inches shorter than the other, and has, in addition to a speech impediment, difficulty in hearing.
The most reliable testimony shows that after threatening to tear off Pence's arm Mullins actually began climbing over the bar after Pence. It was at this point that the defendant Pence reached under the counter and pulled out a .32 calibre automatic pistol and fired one shot into Mullins. Despite being hit with the .32 calibre bullet, Mullins still did not retreat. At this point Pence rapidly fired four more shots into Mullins. After being shot five times plaintiff finally turned and walked out the door, climbed into his car and was driven away by his wife."
After making this finding of fact, the trial court concluded that the defendant, Pence was justified in using the force he did to repel the aggression of the plaintiff. A thorough review of the record leads us to conclude that the trial court's finding of fact is not manifestly erroneous. Although the testimony given by the various witnesses is quite contradictory at places, we find that there is certainly sufficient basis for the trial court's finding of fact as related above.
Appellant's main contention is that the defendant, Pence, used excessive force in repelling the aggression or threatened aggression by the plaintiff. In the recent case of McCullough v. McAnelly, La.App., 248 So.2d 7 (1st Cir. 1971), this court made the following comment which is pertinent regarding the use of a dangerous weapon in repelling an assault:
"Of course, resort to the use of a dangerous weapon in order to repel a supposed attack upon defendant's person. . . cannot be countenanced as justifiable save in exceptional cases where the actor's fear of the danger is not only genuine but is founded on facts which would be likely to produce similar emotions in men of reasonable prudence." 248 So.2d at page 10
This rule is repeated in the case of Terito v. McAndrew, La.App., 246 So.2d 235 (1st Cir. 1971).
The trial court in the case at bar found that Pence was justified in feeling a genuine fear of serious impending physical harm and that the force he used in repelling the aggression was not unreasonable. Our examination of the record leads us to believe that the trial court was not manifestly erroneous in this finding. We recognize that the general rules which express the law as set forth above must be applied to the situations presented in a case by case basis with an eye to determining just what force is necessary and therefore reasonable to repel the acts of an aggressor. In making this determination, the defendant is judged by the standard of a reasonable *806 man in his condition placed in the circumstances and situation in which he acted. The trial court in this case seemed especially impressed with the belligerence of the plaintiff, the large difference in size and strength of the two parties confronting each other, an overt act made by the plaintiff toward Pence coupled with threats of serious bodily harm against the defendant, and the impossibility of retreat by Pence. Regarding the fact that five shots were actually fired into appellant, the trial court believed that Pence was reasonable in his fear following the first shot that the appellant was continuing in his act of aggression against him. Therefore, like the firing of the first shot, the appellee's action in firing the next series of shots was reasonable. We find no error in the trial court's application of the law to the facts in this case. For the above reasons, the trial court's judgment is affirmed, all costs to be paid by plaintiff-appellant.
Affirmed.